UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| GENE KARLSON | : | |
| | : | Case No. 2:13-cv-00655 (SDW) |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| CAROLYN W. COLVIN, | : | April 28, 2014 |
| Acting Commissioner of Social Security | : | |
| | : | |
| Defendant. | : | |

**WIGENTON**, District Judge.

Before this Court is Plaintiff Gene Karlson's ("Plaintiff") appeal of the final administrative decision of the Commissioner of Social Security (the "Commissioner"), with respect to an administrative law judge's denial of Plaintiff's application for waiver of recovery of an overpayment of Social Security Disability Insurance Benefits ("SSDI"). This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. This Court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g). Venue is proper under 28 U.S.C. § 1391(b). For the reasons discussed below, Plaintiff's application for waiver of the recovery of the overpayment is **GRANTED**, and the final decision of the Commissioner, via the determination of the administrative law judge, is **REVERSED**.

I.     FACTS AND PROCEDURAL HISTORY

Plaintiff Karlson injured his back and knee in construction-related accidents in 1987 and in approximately 2000 or 2001. (R. 138-39.) As a result of the accidents and attendant injuries,

1

Plaintiff began receiving SSDI in 2002. (R. 139.) In 2007, Plaintiff started working for IAP World Services, Inc. ("IAP") and earned approximately $43,000 that year. (*Id.*) Plaintiff was laid off from IAP in 2008. (R. 140.) On February 12, 2009, Plaintiff started working for Brady Corporation ("Brady"). (R. 140.) Plaintiff was thereafter laid off from Brady on December 8, 2010. (R. 140.) Plaintiff, however, continued receiving SSDI while employed at IAP. (R. 15, 141.) The SSDI Plaintiff received while employed at IAP (i.e., the overpayment) is the subject of this matter. (R. 15.)

At the hearing to determine whether Plaintiff had to repay the overpayment, Plaintiff testified that he contacted the Social Security Administration (the "SSA") by phone a number of times to inform it that he had begun working. (R. 141.) Plaintiff testified that he sent two letters dated March 22, 2009 and September 20, 2009 to the SSA advising it that he was employed. (R. 141-43.) Plaintiff also submitted a letter showing that he sent his paychecks from IAP to the SSA on April 28, 2007, and that those paychecks were returned to him. (R. 30.) The letter also states that he called the SSA in April or May of 2007 and was told by a representative to keep the SSDI check unless notified by the SSA. (R. 30.) Plaintiff later spoke with another representative on or about February 28, 2008, advising the representative that he was working for IAP but was still receiving SSDI. (R. 30.) Plaintiff maintains that the representative told him that the SSA was still reviewing his case and that he could continue to receive payments while the case was under review. (R. 30.) The letter further states that Plaintiff was assured by a SSA representative that he would not be billed later for the SSDI payments. (R. 30.) Plaintiff spoke with another representative on August 19, 2008 to inform the SSA that he had been laid off from IAP, and he was told by that representative that he would still continue to receive SSDI. (R. 30.)

The SSA sent a "Notice of Proposed Decision" dated January 9, 2009 to Plaintiff informing him of its intention to determine that Plaintiff's disability had ended in November 2007 due to his engagement in substantial work. (R. 19-22.) The letter explains that Plaintiff was not entitled to SSDI from February 2008 through August 2008. (R. 19.) The letter further explains that since Plaintiff had begun working in February 2007, the subsequent nine months (February through October 2007) were considered a trial work period[1]. (R. 20.) It continues that after the trial work period, the SSA would pay SSDI for the two months following the trial work period. (R. 20.) The letter thus concludes that Plaintiff should not have received SSDI after January 2008. (R. 20.)

The SSA thereafter sent a letter to Plaintiff dated February 6, 2009 seeking to recover $11,902.80 in overpayment of SSDI to Plaintiff for February 2008 through August 2008 because he had engaged in substantial work. (R. 23-27.) Plaintiff sent the SSA a letter dated March 22, 2009, outlining the efforts he had undertaken to avoid the overpayment and inquiring as to how he could appeal the overpayment decision. (R. 30-31.)

On or about April 26, 2009, Plaintiff received a "Notice of Change in Benefits" from the SSA reiterating that he was no longer entitled to SSDI benefits from February 2008 to August 2008 because of his engagement in substantial work. (R. 35-38.) Plaintiff later received a letter from the SSA dated July 22, 2009, which acknowledged receipt of Plaintiff's request for waiver of collection of the overpayment. (R. 41-42.) The letter also advised Plaintiff of an in-person conference scheduled for August 6, 2009 with a SSA official. (R. 41-42.) Plaintiff apparently attended the conference because he executed a statement explaining why he believed that he was not at fault in causing the overpayment. (R. 43-44.) The statement is date-stamped August 6, 2009 with a SSA insignia. (R. 43-44.) The SSA thereafter sent Plaintiff a letter dated August 6,

---

[1] Social Security Regulations allow benefit recipients to undertake a nine-month "trial work period" to assess whether they are capable of engaging in substantial gainful activity. 20 C.F.R. § 404.1592.

3

2009 finding that Plaintiff was not at fault in causing the overpayment but also finding that he could afford to repay the $11,902.80 overpayment. (R. 45-47.) As such, the SSA decided that it could not waive collection of the overpayment. (R. 45-47.) Consequently, on or about September 20, 2009, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (R. 48.)

The hearing was conducted on January 5, 2011. (R. 132.) The ALJ determined that Plaintiff was overpaid $11,902.80 for the months of February 2008 through August 2008. (R. 17.) After taking Plaintiff's testimony, the ALJ found that Plaintiff was at fault in causing the overpayment and denied waiver of recovery of the overpayment. (R. 16-17.) Plaintiff filed the instant complaint on January 30, 2013, asking this Court to reverse the Commissioner's decision and grant Plaintiff a waiver of recovery of the overpayment. (Dkt. No. 1.)

## II.     LEGAL STANDARD

In social security appeals, district courts have plenary review of the legal issues decided by ALJs. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). The court's review of the ALJ's factual findings, however, is limited to determining whether there is substantial evidence to support those conclusions. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 564-65 (1988) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

Substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x. 613, 616 (3d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Furthermore, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Bailey*, 354 F. App'x. at 616 (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). If the factual

record is adequately developed, however, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966) (citations omitted). Nonetheless, "where there is conflicting evidence, the ALJ must explain which evidence he accepts and which he rejects, and the reasons for that determination." *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x. 475, 479 (3d Cir. 2007) (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)). "The ALJ's decision may not be set aside merely because [a reviewing court] would have reached a different decision." *Cruz*, 244 F. App'x. at 479 (citing *Hartranft*, 181 F.3d at 360)). The court is required to give substantial weight and deference to the ALJ's findings. *See Scott v. Astrue*, 297 F. App'x. 126, 128 (3d Cir. 2008).

### III. DISCUSSION

Under the Social Security Act (the "Act"), "[w]henever the Commissioner of Social Security finds that more or less than the correct amount of payment has been made to any person ... proper adjustment or recovery shall be made." 42 U.S.C. § 404(a)(1). Payments made in excess of the correct amount must be recovered from the individual unless the individual is 1) "without fault" and 2) recovery "would defeat the purpose of [the Act] or would be against equity and good conscience." 42 U.S.C. § 404(b). The plaintiff bears the burden of establishing that he is entitled to a waiver of recovery of the overpayment. *Lang v. Sullivan*, 762 F. Supp. 628, 631-32 (D.N.J. 1991) *aff'd sub nom. Lang v. Dep't of Health & Human Servs.*, 947 F.2d 936 (3d Cir. 1991) (citing *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1042-43 (2d Cir. 1984)).

A determination that fault exists on the part of the overpaid individual will be made if the payments resulted from:

> (1) An incorrect statement made by the individual which he knew or should have known to be incorrect; or

5

> (2) Failure to furnish information which he knew or should have known to be material; or
>
> (3) With respect to the overpaid individual only, acceptance of a payment which he either knew or could have been expected to know was incorrect.

*Patton v. Bowen*, 678 F. Supp. 85, 88 (D.N.J. 1988) *aff'd*, 866 F.2d 1412 (3d Cir. 1988). The fact that "... the Administration may have been at fault in making the overpayment ... does not relieve the overpaid individual ... from liability for repayment if such individual is not without fault." *Bierley v. Barnhart*, 188 F. App'x 117, 120 (3d Cir. 2006) (citing 20 C.F.R. § 404.507)). A showing of bad faith is not required; "rather, an honest mistake may be sufficient to constitute fault." *Center v. Schweiker*, 704 F.2d 678, 680 (2d Cir. 1983) (citing *Morgan v. Filch*, 423 F.2d 551 (6th Cir. 1970)).

With respect to defeating the purpose of the Act, "[t]he regulations instruct that recovery of an overpayment would defeat the purpose of the Act if the individual's own income and resources are needed for ordinary and necessary expenses." *Woods v. Shalala*, 884 F. Supp. 156, 160 (D.N.J. 1995) (citing 20 C.F.R. § 416.553(a)). As defined in 20 C.F.R. § 404.508(a), ordinary and necessary expenses are "fixed living expenses such as food, rent, medical expenses, or support of another." 20 C.F.R. § 404.508(a). Equity and good conscience are offended "if an individual changed ... [his/her] position for the worse or relinquished a valuable right because of reliance upon a notice that payment would be made..." *Woods*, 884 F. Supp. at 161 (citing 20 C.F.R. § 416.554)).

Accordingly, this Court must conduct a two-step analysis. First, it must decide if Plaintiff was "without fault" in causing the overpayment. If he was not "without fault," the analysis can stop there and the Court must deny his application for waiver of his repayment obligation. If this

Court finds he was "without fault," however, it must next determine if requiring repayment would defeat the purpose of the Act or be against equity or good conscience.

### A.     Without Fault Determination

The ALJ determined that "[t]he claimant is at fault in causing the overpayment as he failed to furnish his work activity in a timely manner which he knew or should have known to be material." (R. 17.) The ALJ apparently based this determination upon her finding that there was no objective documentation demonstrating that he attempted to contact the SSA. (R. 16.) "At fault" determinations are factual conclusions and are therefore reviewed under the "substantial evidence standard." *Howard v. Sec. of Dep't of Health & Human Servs.*, 741 F.2d 4, 8 (2d Cir. 1984) ("The Secretary's conclusion that a claimant was not without fault is a factual determination that must be upheld if it is supported by substantial evidence in the record as a whole."); *Morris v. Shalala*, No. 92 Civ. 1508, 1994 U.S. Dist. LEXIS 593, *5 (E.D. Pa. Jan. 5, 1994) ("Whether a recipient was 'without fault' in receiving and accepting overpayment of benefits is a factual determination reviewed under the substantial evidence standard.")

Plaintiff argues that he satisfied the burden of establishing that he was without fault in causing the overpayment. (Pl.'s Br. 14-15.) He contends that he contacted the SSA by phone several times to advise it that he had started working. (*Id*. at 15.) He also points to two separate letters that he sent to the SSA dated March 22, 2009 and September 20, 2009 as further support of his attempts to contact the SSA to inform it that he had started working. (*Id.* at 15.) Additionally, Plaintiff highlights that he mailed his paychecks from IAP to the SSA, that those checks were returned to him, and that he was told to keep his paychecks by the SSA. (*Id.* at 16.) Finally, Plaintiff relies on the fact that, prior to the hearing, the SSA had already determined that he was not at fault in causing the overpayment. (*Id*. at 19.)

7

The ALJ's determination that Plaintiff was at fault is unsupported by substantial evidence. The substantial evidence "standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x. 613, 616 (3d Cir. 2009) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). As an initial matter, the ALJ apparently ignored the fact that prior to conducting the hearing, the SSA had already determined that Plaintiff was without fault in causing the overpayment. (R. 45.) Indeed, the ALJ explicitly acknowledged this fact by stating the following during the hearing: "Okay, so, it appears to me, then, that they, they have considered the statements that you made, the [Social Security] Agency did, and they made a favorable decision on the issue of fault. They said you weren't at fault in terms of causing the overpayment." (R. 143.) Despite this admission, the ALJ nevertheless went on to conclude that Plaintiff was at fault in causing the overpayment. Furthermore, while the ALJ noted that Plaintiff returned the March 2009 overpayment, the ALJ apparently ignored this evidence in concluding that Plaintiff was at fault. (R. 15.) In determining that Plaintiff was at fault for the overpayment because he failed to report his work activity to the SSA, the ALJ neglected to give any weight to Plaintiff's return of the March 2009 overpayment. (R. 17.) In fact, the ALJ failed to cite to any evidence contradicting Plaintiff's evidence and testimony that he made numerous attempts to notify the SSA that he had started working.

Moreover, in making the at fault determination, the ALJ apparently relied on the fact that Plaintiff failed to produce any objective documentation or tangible evidence of his contacts with the SSA. (R. 16.) This reliance, however, is belied by the SSA's own documentation. According to the ALJ's analysis of the SSA-maintained master beneficiary record ("MBR"), Plaintiff returned the March 2009 overpayment after he was notified that he was overpaid. (R. 15.) Additionally, the SSA wrote a letter dated August 6, 2009 to Plaintiff explaining that he was not at fault in

causing the overpayment. (R. 45-47.) This letter is particularly salient with respect to the "at fault" issue because it is dated the exact same day Plaintiff submitted his statement to the SSA after having an in-person conference with a local SSA official. (R. 41-44.) Nevertheless, the ALJ found that the record lacked objective documentation or tangible evidence supporting Plaintiff's testimony that he attempted to contact the SSA.

Finally, it should be noted that the ALJ failed to make any credibility determinations or indicate what portions of Plaintiff's testimony she rejected. *See Baerga v. Richardson*, 500 F.2d 309, 312 (3d Cir. 1974), *cert. denied*, 420 U.S. 931 (1975) (criticizing the hearing officer for submitting a brief summary of the evidence and conclusory findings of fact without specific statements as to what portions of the evidence he accepted or rejected). "[A]n ALJ must make his credibility determinations explicit, especially in those decisions where it is ambiguous as to whether the claimant's testimony is believed and where such testimony is critical to the claimant's assertion that he is 'without fault.'" *Morris*, 1994 U.S. Dist. LEXIS at *22-23. Plaintiff testified that he called the SSA on numerous occasions and spoke to several different officials in various offices advising them that he had returned to work. (R. 141-43.) He also submitted a March 22, 2009 letter into evidence that he had sent to the SSA, which memorialized his conversations. (R. 30, 143.) Additionally, Plaintiff submitted a September 20, 2009 letter into evidence that corroborates his phone calls to the SSA. (R. 50.) The ALJ apparently rejected Plaintiff's testimony but failed to indicate that she considered and discredited it. Other than incorrectly noting that objective evidence did not exist to corroborate Plaintiff's testimony, as detailed *supra*, the ALJ failed to even acknowledge that Plaintiff testified that he made numerous attempts to contact the SSA. *See Wier v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984) (stating that "an administrative law judge may not reject a claimant's testimony without some evidence in the record to support this

rejection") (citing *Davidson v. Harris*, 502 F. Supp. 1208, 1213 (E.D. Pa. 1980)).  Last, what is particularly troubling is that Plaintiff submitted evidence that on one occasion when he called the SSA to advise that he had returned to work, he specifically asked the representative whether the SSA would later seek to recoup the overpayment and the representative assured him that the SSA would not. (R. 30.) Under the Social Security Regulations, "[w]here an individual ... accepts such overpayment because of reliance on erroneous information from an official source within the Social Security Administration ... with respect to the interpretation of a pertinent provision of the Social Security Act or regulations pertaining thereto, ... such individual, in accepting such overpayment, will be deemed to be 'without fault.'" 20 C.F.R. § 404.510a; *see Russell v. Heckler*, 866 F.2d 638, 640 (3d Cir. 1989).  Thus, Plaintiff's uncontradicted testimony, absent an explicit finding that it was not credible, should have been sufficient for a finding that he was without fault.

In sum, substantial evidence exists to support the conclusion that Plaintiff sustained his burden of demonstrating that he was without fault in causing the overpayment.  As such, the ALJ's decision on this issue is reversed.

      **B.**      **Repayment of an Overpayment Under the Act**

Having determined that Plaintiff was without fault in causing the overpayment, the analysis now turns to whether requiring Plaintiff to repay the overpayment would defeat the purpose of the Act or be against equity and good conscience.  Since the ALJ determined that Plaintiff was at fault, she did not reach this issue.

Under the Act, Congress has limited the SSA's power to recover overpayments by providing that "there shall be no ... recovery by the United States from any person who is without fault if such recovery would defeat the purpose of [the Act] or would be against equity and good conscience..." 42 U.S.C. § 404(b).  Recovery of an overpayment will defeat the purpose of the Act

if it "deprive[s] a person of income required for ordinary and necessary living expenses." 20 C.F.R. § 404.508(a). An individual's "ordinary and necessary expenses" include:

> (1) Fixed living expenses, such as food and clothing, rent, mortgage payments, utilities, maintenance, insurance (e.g., life, accident, and health insurance including premiums for supplementary medical insurance benefits…), taxes, installment payments, etc.;
>
> (2) Medical, hospitalization, and other similar expenses;
>
> (3) Expenses for the support of others for whom the individual is legally responsible; and
>
> (4) Other miscellaneous expenses which may reasonably be considered as part of the individual's standard of living.

20 C.F.R. § 404.508(a). The Commissioner argues that "repayment would not be against the purpose of the Act because it would not deprive Plaintiff of income required for ordinary and necessary living expenses." (Def. Br. 7). The Commissioner argues that Plaintiff's monthly ordinary and necessary living expenses are limited to the following:

| Expense | Amount |
|---|---|
| Rent | $940.00 |
| Electric | $35.00 |
| Prescriptions | $36.00 |
| Food | $600.00 |
| Laundry | $80.00 |
| Clothing | $100.00 |
| Total | $1,791.00 |

(*Id.*) The Commissioner thus argues that requiring Plaintiff to reimburse the SSA would not defeat the purpose of the Act.

Plaintiff retorts that in addition to the expenses enumerated by the Commissioner, the following are additional ordinary and necessary monthly living expenses:

| Expense | Amount |
|---|---|
| Cable/Computer/Phone | $130.84 |
| Cell Phone | $87.89 |
| Credit Card #1 Payments | $120.00 |

11

| | |
|---|---|
| Credit Card #2 Payments | $100.00 |
| Auto Insurance | $145.00 |
| Car Operation/Maintenance | $300.00 |
| Garage and Storage | $335.00 |
| Union Dues | $35.00 |
| Total | $1,253.73 |

(R. 105.) Plaintiff therefore argues that his monthly expenses total $3,044.73. In addition, Plaintiff testified that he has $1,000 in outstanding medical bills and owes $279.89 in back taxes to the state. (R. 105, 147-149.) Plaintiff further testified that he has approximately $1,500 in various bank accounts and that he has approximately $1,000 in a 401(k) retirement account. (R. 105, 148-49.) Plaintiff testified that at the time of the hearing, he had enough money to pay his rent but did not know how he would pay his other bills. (R. 145-46.) Importantly, Plaintiff was unemployed at the time of the hearing and was not then receiving unemployment benefits or any other benefits, although he believed that he would get unemployment benefits at some point. (R. 136, 149-50.) As such, Plaintiff did not have any monthly income at the time of the hearing. (R. 145.)

In analyzing Plaintiff's listed expenses, this Court finds that not all of Plaintiff's claimed expenses qualify as "ordinary and necessary expenses." First, it should be noted that Plaintiff attempted to reduce his monthly expenses by moving to a lower rent apartment and lowering his car insurance coverage. (R. 145.) This Court finds that Plaintiff's ordinary and necessary expenses total $2,674.73, which includes the following expenses: rent, electric, prescriptions, food, laundry, clothing, cable/computer/phone, cell phone, credit card payments, auto insurance, and car operation/maintenance. Given that Plaintiff had no income and his monthly expenses total $2,674.73, this Court finds that requiring Plaintiff to repay the overpayment would be against the purpose of the Act.

The Commissioner argues that repayment would not be against the purpose of the Act because Plaintiff will have enough funds to cover his expenses and also repay the overpayment.

12

(Def.'s Br. 7-8.) This argument is unpersuasive. First, the Commissioner's argument is premised on Plaintiff receiving unemployment benefits. (*Id*. at 8.) At the time of the hearing, Plaintiff testified that he hoped to receive $600 per week in unemployment benefits. (R. 149-50.) Plaintiff had not yet received those benefits, however, and the record is devoid of any evidence that Plaintiff actually received the benefits subsequent to the hearing. For this reason, the Commissioner's argument is unavailing.

Second, assuming *arguendo* that Plaintiff did receive unemployment benefits, his qualifying monthly living expenses total approximately $2,674.73. This amount exceeds the potential $2,400 in unemployment benefits he hopes to receive. It should also be noted that the $2,674.73 figure does not include the $1,000 in medical bills and $279.89 in back taxes for which Plaintiff is liable. Accordingly, requiring Plaintiff to repay the overpayment would deprive him of the funds required for his ordinary and necessary living expenses and therefore, would defeat the purpose of the Act.

Furthermore, it would be "against equity and good conscience" to mandate that Plaintiff repay the overpayment. The unrebutted evidence shows that Plaintiff made extensive efforts to inform the SSA that he had returned to work. (R. 30, 50, 141-43.) He even went as far as forwarding his paychecks to the SSA, which were later returned to him. (R. 30.) Additionally, he was assured by a SSA representative that the SSA would not later attempt to recoup the erroneous benefit payments. (R. 30.) Therefore, this Court finds that it would be inequitable and offend good conscience to require Plaintiff to repay the overpayment.

## IV.   CONCLUSION

For the reasons stated above, the determination of the ALJ that Plaintiff was not "without fault" is **REVERSED**. This Court finds that Plaintiff was "without fault" and that repayment

would defeat the purpose of the Act and would also offend equity and good conscience. Thus, Plaintiff's application for waiver of the recovery of the overpayment is **GRANTED**.

s/Susan D. Wigenton, U.S.D.J.

Orig:   Clerk
Cc:     Parties